STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1218

STATE OF LOUISIANA

VERSUS

DENNIS WAYNE BAKER

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 278,670
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Glenn B. Gremillion, Judges.

Amy, J., concurs in part, dissents in part, and assigns reasons.

AFFIRMED.

James C. Downs
District Attorney
Charles Edward Johnson
Assistant District Attorney
9th Judicial District Court
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
Counsel for Plaintiff/Appellee:
        State of Louisiana

**Edward Kelly Bauman**
**La Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**Counsel for Defendant/Appellant:**
      **Dennis Wayne Baker**

**Dennis Wayne Baker**
**115779 Birch Unit B-2**
**P. O. Box 1260**
**Winnfield, LA 71483-1260**

GREMILLION, Judge.

In this case, the defendant, Dennis Wayne Baker, was convicted of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1, and was sentenced to serve fifteen years at hard labor without benefit of parole, probation, or suspension of sentence. He is now before this court on appeal asserting that there is insufficient evidence to sustain his conviction and that his sentence is excessive. For the following reasons, we affirm.

## FACTS

From February 2005 to June 2005, Detective Buddy Willis of the Rapides Parish Sheriff's Office conducted an investigation of Defendant, a convicted felon, with regard to the illegal possession of firearms as a felon. In taped conversations between Defendant and his girlfriend, Sandra Rashall, during his incarceration in the Rapides Parish Correctional Facility on an unrelated charge, he indicated that he possessed guns prior to his incarceration.

On June 14, 2005, Detective Willis executed a search warrant and recovered a rifle from the home of Donna Hastings and a rifle from the home of Derek Belgard, which were allegedly possessed, in part, by the Defendant during the time of the investigation. A pistol was recovered from Rashall's residence.

## SUFFICIENCY OF EVIDENCE

In this assignment of error, Defendant argues that the evidence presented at trial was insufficient to sustain his conviction. He maintains that there was no evidence presented to show that he intended to possess the guns in question, that he

1

possessed the guns, that the guns in question were in his immediate control, or that

he had constructive possession of the guns.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981).  It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review.  *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)).  In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of the charge, possession of a firearm by a convicted felon,

are set forth in La.R.S. 14:95.1(A) (footnote omitted) as follows:

> It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541(14.1), or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

2

Defendant does not dispute that he has prior felony convictions and that the ten-year cleansing period under the provisions of La.R.S. 95.1(C)(1) has not run.

Early in the trial, the State offered into evidence a transcript of telephone conversations between Defendant and Rashall, with whom he lived, which were taped when he was incarcerated. The conversations occurred when Defendant entered into the jail system on May 19, 2005, until about two months later. The conversations were read aloud at trial and the following involve Defendant's alleged possession of the guns:

DB: Do me a favor? Let's get over this right now. Call Donna now on her cell.

SR: No, don't get ugly with her.

DB: I ain't going to get ugly.

SR: She's not any (can't understand). No, I know. I want to talk to you right now and today. Just call back and then we'll call Donna and you tell Donna to give me the gun. I want the gun out of her house and away from her, do you hear me?

DB: Yes.

SR: Because that's our gun – that's your gun and my gun.

DB: I worked on that mother f----- long enough.

SR: That's right. That was an antique and you worked on it for a month.

DB: That's your grandpa's gun.

SR: That's right. That's my grandpa's gun and I told her – and I told her, I said, I called her one day about the gun and I said, "you make sure nothing happens to that gun, Donna, because then it's -- that's an antique gun and Dennis worked on that thing to redo it."

. . . .

3

DB:  I appreciate that.  Call P. J. When you hang up with him and tell him to come over here and look at the tools I got, and tell him to pawn -- you know, you need some money, I need some money, and to pawn my drywall tools.  None of them are stolen, okay.  I've got the papers on that gun at the house somewhere, because I bought the gun for one, okay -- I bought the gun for one when I had my own little business going on.  Tell them it's legal, everything's legit.
Hey, I love you.
. . . .

DB:  We're about to get nasty.  We're going to do the nasty for a week, maybe two, but I ain't leaving.  Those cell phones going in the mother f------- cesspool.  I'm throwing the mother f------'s dead in the s--t tank.  I ain't bulls--tting.  The mother f------ cell phone, the house phone is going in the -- and the cell phone; I don't want to hear nar [sic] a mother f------.  If they come out there, make sure both my guns are loaded and I'm just going to walk out the door and start shooting.  Get the f--- out, old bitch, don't come back; the next bullet's going to be in you.
You been practicing?

SR:  Yeah.

DB:  They shooted [sic] the 22?

SR:  No, I hadn't.

DB:  You ain't shot a gun?

SR:  No.

DB:  I'm going to have to clean that mother f------ because we --

SR:  Yeah, I already cleaned it.

DB:  We shot the f--- out of that mother f------ the day we shot over -- how many bullets we shot?

SR:  Oh, I don't know.  I cleaned it since then.

DB:  Oh, you did?

SR:  Uh-- I cleaned it when I got home because (cannot understand).

Next, the State called Rashall who testified that she lived with Defendant from February 2005, until May 2005.  She identified a gun that had been seized from

4

her home and testified that Defendant had brought it to her home. According to Rashall, the weapon belonged to Defendant and they shot it together. Rashall stated that she did not want to lie by saying that gun belonged to her to cover for Defendant, and she denied having a grudge against him.

On cross examination, Rashall admitted that she had been convicted of possession of marijuana and that she has two counts of aggravated burglary, four counts of burglary of a dwelling, and two counts of theft over $500 pending against her. She also admitted that she was on probation for theft of $300 to $500 in Grant Parish. However, she testified that she was not promised anything by the district attorney, the assistant district attorney, or Investigator John Allen as an inducement to testify against Defendant. Further, Detective Buddy Willis of the Rapides Parish Sheriff's Office also testified that the district attorney's office did not make any promises or inducements to Rashall or Donna Hastings to get them to testify.

Hastings, the woman referred to in the taped conversations, testified that her husband was very good friends with Defendant. She explained that after her husband had been incarcerated, she wanted a gun for safety since she was living alone. According to Hastings, Defendant told her that he had a gun that belonged to Rashall's grandfather that she could borrow for her protection. Hastings went to the home of Defendant and Rashall and Defendant gave her the gun and showed her how to load and shoot it. Hastings could not remember the date she picked up the gun, but acknowledged that it was prior to Defendant's incarceration in May 2005.

Detective Willis testified that Hastings consented to a search of her house and she voluntarily gave him the gun. The search occurred on June 14, 2005,

5

when Defendant was incarcerated. In Hastings' statement to Detective Willis, she stated that she got the gun from the Defendant. Detective Willis also testified that Defendant's fingerprints were not on the gun.

A rifle was retrieved from the home of Derek Belgard on May 17, 2005, when Mr. Belgard was arrested. Defendant's fingerprints were not on the gun and there was no paper work linking him to the gun.

While Defendant is correct in his assertion that there were no fingerprints found on the weapons, the taped conversations corroborated the testimony of the two fact witnesses who testified that he did possess the firearms. As we noted in *State v. Brooks*, 99-478, p. 4 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 339, *writ denied*, 00-1492 (La. 5/25/01), 792 So.2d 750:

> Neither possession of a firearm by a convicted felon nor illegal carrying of weapons requires actual physical possession of a firearm upon the person of the accused; constructive possession of a firearm satisfies the possessory element. *State v. Armentor*, 94-745 (La.App. 3 Cir. 2/1/95); 649 So.2d 1187, *writ denied*, 95-0557 (La. 6/30/95); 657 So.2d 1027, citing *State v. Day*, 410 So.2d 741 (La.1982). Constructive possession exists when the illegal object is subject to the defendant's dominion and control. *State v. Johnson*, 463 So.2d 778 (La.App. 4 Cir.1985).

*See also State v. Joseph*, 02-1370, (La.App. 3 Cir. 4/17/03), 854 So.2d 914. Therefore, the evidence admitted at trial was sufficient to show that Defendant had actual possession or, at the very least, dominion and control over a firearm, which amounted to constructive possession. Accordingly, this assignment of error is without merit.

**EXCESSIVE SENTENCE**

By this assignment, Defendant argues that the sentence imposed by the trial court was unusual and excessive. Defendant did not file a motion to reconsider

6

his sentence in the trial court. Thus, he is limited on appeal to a review of a bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993).

As we have noted, Defendant was found guilty of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1, which states in pertinent part:

> B.      Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.

Therefore, he received the maximum sentence of fifteen years.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La. 2/1/02), 808 So.2d 331 (alteration in original).

In *State v. Lisotta*, 98-648, (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-0433 (La. 6/25/99), 745 So.2d 1183, our colleagues on the Fifth Circuit Court of Appeal noted three factors the appellate court should consider in reviewing a judge's sentencing discretion. They are:

> 1. the nature of the crime,

> 2. the nature and background of the offender, and
> 3. the sentence imposed for similar crimes by the same
>   court and other courts.
>
> *State v. Telsee*, 425 So.2d 1251 (La.1983); *State v. Richmond*, 97-1225
> (La.App. 5 Cir. 3/25/98), 708 So.2d 1272.

*Id.* at 58.

At sentencing, the trial court reviewed Defendant's prior criminal history which included nine felony convictions in addition to pending charges of two counts of aggravated burglary, six counts of burglary of a dwelling, and four counts of theft over five hundred dollars. The trial court was also informed that the Defendant was convicted of unauthorized entry of an inhabited dwelling in Grant Parish in 2005. Considering his prior criminal history in Rapides Parish, the trial court imposed the maximum sentence for the crime. However, the trial court did not articulate any other reasons for imposing the fifteen-year sentence.

In *State v. Morvan*, 31,511 (La.App. 2 Cir. 12/9/98), 725 So.2d 515, *writ denied*, 99-0186 (La. 5/28/99), 743 So.2d 659, the court of appeal upheld a maximum fifteen-year sentence for possession of a firearm by a convicted felon, noting defendant's multiple felonies, including two violent crime convictions and at least three DWI dispositions. The court of appeal concluded that the defendant showed a continued propensity for illegal activity and a failure to benefit from prior leniency. Further, the appellate court noted the defendant's predilection toward alcohol, and believed that the defendant demonstrated an inclination toward violence by using a gun to threaten someone's life.

Because of Defendant's extensive criminal history, we hold that the trial court did not abuse its broad sentencing discretion. Although the trial court did not state whether it considered the nature of the crime or sentences imposed for similar crimes by the same court and other courts, the record clearly demonstrates

Defendant's propensity for illegal activity. Also, his recorded telephone conversations found in the record, which are referred to herein, reflect a total disregard for the law as demonstrated by Defendant's involvement in committing the instant offense. Accordingly, we affirm Defendant's sentence of fifteen years at hard labor.

## RECUSAL OF ASSISTANT DISTRICT ATTORNEY

In this assignment of error, Defendant argues that the trial court erred in denying his motion to recuse Assistant District Attorney Charles Johnson, who was prosecuting his case. Defendant maintains that Mr. Johnson had previously represented him in 1998 while Mr. Johnson was employed with the Public Defender's Office. Because of that, Defendant contends that it was inherently prejudicial to allow Mr. Johnson to represent the State in prosecuting him, as both the present charge and his previous charge can be used against him at any habitual offender proceedings the State may choose to institute.

In *State v. Bourque*, 622 So.2d 198, 216-17 (La.1993), the Louisiana Supreme Court addressed the defendant's burden in a motion to recuse a district attorney as follows:

> In a motion to recuse the district attorney, "the defendant bears the burden of showing by a preponderance of the evidence that the district attorney has a personal interest in conflict with the fair and impartial administration of justice." *State v. Edwards*, 420 So.2d 663, 673 (La.1982). While this standard of proof is applicable for the disqualification of an assistant district attorney, the grounds for disqualification are not necessarily restricted to the statutory grounds to recuse a district attorney as set forth in La.C.Cr.P. art. 680. *See State v. Allen*, 539 So.2d 1232, 1234 (La.1989).

Further, in *State v. Brown*, 274 So.2d 381, 382 (La.1973), the supreme court stated, "The mere fact that an assistant district attorney previously represented an accused

9

does not [i]pso facto require disqualification of the District Attorney in the criminal proceeding."

Louisiana Code of Criminal Procedure Article 680 provides, in part, that a district attorney shall be recused when he has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney. However, as noted in *Bourque*, 622 So.2d 198, and *State v. Allen*, 539 So.2d 1232 (La.1989), the grounds required for the disqualification of a district attorney are not necessarily restricted to the statutory grounds set forth in Article 680. The supreme court in *Allen* held that "although art. 680 expressly requires recusation when the district attorney was previously employed 'in the case,' the ethical rules and the jurisprudence impose a broader gloss on the statutory requirement by providing for recusation when the district attorney was previously employed in 'a substantially related matter.'" *Id.* at 1234. Thus, the question before this court is whether Mr. Johnson's prior representation of Defendant is substantially related to the instant criminal proceeding.

In *Allen*, the supreme court approved the substantial relationship test adopted by the federal courts, which set forth the standards of proof used for attorney disqualification:

> In [*United States* v.] *Kitchin*, [592 F.2d 900, 904(5th Cir., *cert. denied,* 444 U.S. 483, 100 S.Ct. 86 (1979)],the court rejected the idea that confidential information must have been disclosed in order for the recusation to be proper and stated:
>
> > So long as the affected party can show that the matters involved in the previous representation are substantially related to those in an action in which the attorney represents an adverse party, the former client is entitled to the disqualification of the lawyer.
>
> . . . .

10

> The aggrieved party need not prove that [the lawyer] actually obtained confidential information nor that he has or will disclose it to his present employer.

Similarly, the Eighth Circuit in [*State of Arkansas* v.] *Dean Foods* [*Products Co.,* 605 F.2d 380, 383 (8th Cir. 1979)] reiterated the rule for attorney disqualification:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action [where] the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.

*Id*. at 1234 (alterations in part in original).

In *Allen*, the assistant district attorney prosecuting the defendant for conspiracy charges had previously represented the defendant in bankruptcy. The defendant moved to recuse the assistant district attorney, which was denied by the trial court and affirmed on appeal. The supreme court reversed the appellate decision, finding that the assistant district attorney's representation of the defendant in the bankruptcy proceeding concerned matters substantially related to the conspiracy charge against him. More specifically, the court concluded that an essential element in the conspiracy charge was the defendant's intent to defraud which could have been called into question by the events that occurred in the bankruptcy proceeding.

As noted by Defendant in his supplemental brief, this issue was before this court in *State v. Gardner*, 94-594 (La.App. 3 Cir. 11/2/94), 649 So.2d 519, *reversed*, 94-2954 (La. 3/24/95), 651 So.2d 282. In *Gardner*, J. Reed Walters was court appointed counsel for the defendant's first two DWI offenses. In his limited representation of the defendant, Mr. Walters filed pre-trial motions and may have passed on information about a potential plea bargain agreement. The defendant also consulted another attorney, Norris D. Jackson, but chose not to retain him as counsel.

11

Eventually, the defendant replaced Mr. Walters with another attorney, Edward Larvadain. After the defendant retained Mr. Larvadain, Mr. Walters ceased all contact with the defendant and the case, and the defendant ultimately pled guilty to both offenses while represented by Mr. Larvadain.

The defendant was charged with DWIs a third and fourth time, the fourth charge being the subject of the litigation at issue. Prior to Defendant's fourth DWI, Mr. Walters was elected district attorney, and he hired Mr. Jackson to serve as an assistant district attorney. After taking office, the defendant was arrested for his fourth DWI, and in Mr. Walters' capacity as district attorney, he charged the defendant as a fourth DWI offender pursuant to La.R.S. 14:98(E).

The defendant filed a motion to recuse both Mr. Walters and Mr. Jackson from prosecuting the matter because they had previously represented or counseled him for his first two DWIs. The trial court granted the defendant's motion and recused the district attorney and his office. On appeal, this court reversed the trial court's ruling, stating:

> We have considered the holding of [*State v.*] *Allen*, [539 So.2d 1232 (La.1989)] in conjunction with LSA-C.Cr.P. Art. 680 and conclude that the trial court erred by granting the defendant's motion to recuse Mr. Walters and Mr. Jackson from prosecuting this case. Unlike the facts addressed in *Allen*, *supra*, Mr. Walters and Mr. Jackson's brief contact with the defendant bears no substantial relationship to any of the elements needed to convict the defendant for his fourth DWI offense.
>
> When the defendant entered his previous guilty pleas, Mr. Walters was discharged. The defendant was represented only by Mr. Larvadain when he entered his guilty pleas and the minutes from these guilty pleas so reflect. Since these predicate DWI offenses are guilty pleas, the inquiry as to their constitutional validity will only concern Mr. Larvadain, not Mr. Walters and Mr. Jackson.
>
> Accordingly, under these circumstances, we find that Mr. Walters' limited representation of the defendant for his December 27, 1985, and February 1, 1986, DWI charges fails to involve matters substantially related to any element of the DWI charge now against the defendant. The record indicates that after being replaced as counsel by Mr.

12

Larvadain on October 6, 1987, Mr. Walters ceased all contact with the defendant and played no role in the defendant's decision to plead guilty to the DWI charges in question on April 5, 1988. A *fortiori*, we also reach the same conclusion regarding Mr. Jackson's consultation with the defendant.

*Id.* at 522-23. However, the defendant applied for writs in the supreme court which was granted, and ultimately the judgment of the court of appeal was reversed and the ruling of the trial court was reinstated, without reasons. *State v. Gardner*, 94-2954 (La. 3/24/95), 651 So.2d 282.

In the instant case, Defendant moved to recuse Assistant District Attorney Charles Johnson as prosecutor and the Rapides Parish District Attorney's Office. In his written motion, Defendant asserted that he was charged with simple escape in Rapides Parish in 1998, and was represented by attorney Bridgette Brown. At the time of his trial, Ms. Brown was not present and Mr. Johnson, her associate at the time, appeared on behalf of Defendant and entered a guilty plea on his behalf.

At the hearing in the case sub judice, the trial court noted that Mr. Johnson stood in for Ms. Brown when Defendant actually entered the guilty plea to the charge of simple escape. Defendant disagreed, stating that Mr. Johnson stood in on two other occasions. However, the record reflects that Mr. Johnson reviewed the minutes in Defendant's numerous felonies and had located only one instance wherein he stood in for Ms. Brown and that the matter involved a guilty plea.

Considering the information set forth in Defendant's motion and the facts adduced at trial, we find that the Defendant has failed to show that the matters involved in Mr. Johnson's previous representation are substantially related to those in the instant matter. In other words, he failed to show that the matters embraced within the pending charge for possession of a firearm by a felon are substantially related to the matters in the 1998 criminal action wherein he pled guilty to simple

13

escape. The mere possibility of future litigation involving a habitual offender proceeding, which could encompass the conviction for simple escape and possession of a firearm by a felon, does not warrant the recusal of Mr. Johnson in the instant matter. The present case is distinguishable from *Allen* and *Gardner* because Defendant here relies upon speculation about future charges rather than a substantial relationship to the charges at hand. Accordingly, this assignment of error is without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant did not formally assign as error the ineffective assistance of counsel in his pro se brief to this court, but he did argue in that brief that his counsel was ineffective in that he did not question Rashall regarding her bias for testifying on behalf of the State. In the interest of justice, we shall address that issue herein. Specifically, Defendant claims that Rashall had a great interest in testifying against him because there were charges pending against her at the time of her testimony and she received a probated sentence for those charges.

As noted by the supreme court in *State v. Leger,* 05-0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142-43, *cert. denied*, __U.S. __, __S.Ct. __(2007):

> "Initially we note that ineffective assistance of counsel claims are usually addressed in post-conviction proceedings, rather than on direct appeal." *State v. Deruise*, 1998-0541 p. 35 (La.4/3/01), 802 So.2d 1224, 1247-1248, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). The post-conviction proceeding allows the trial court to conduct a full evidentiary hearing, if one is warranted. *State v. Howard*, 1998-0064 p. 15 (La.4/23/99), 751 So.2d 783, 802, *cert. denied*, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). Where the record, however, contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue may be considered in the interest of judicial economy. *State v. Smith*, 1998-1417 (La.6/29/01), 793 So.2d 1199 (Appendix, p. 10), *cert. denied*, 535 U.S. 937, 122 S.Ct. 1317, 152 L.Ed.2d 226 (2002); *State v. Ratcliff*, 416 So.2d 528 (La.1982).

14

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

Initially, we find that the record on appeal is sufficient to decide Defendant's claim of ineffective assistance of counsel in this case. First, we note that he refers to La.R.S. 15:492, which has been repealed, and La.R.S. 14:495, which is not a valid statute. However, Defendant is correct in his assertion that he is entitled to confront and cross-examine Ms. Rashall pursuant to La.Const. art. 1, § 16. In that regard and in conformity with that constitutional authority, defense counsel was permitted to cross-examine Rashall. On cross-examination, defense counsel delved extensively into the criminal background of Rashall. She admitted that she had criminal charges pending against her, including two counts of aggravated burglary, two counts of burglary of a dwelling, and two counts of theft over $500, arising from one arrest, in addition to charges stemming from another arrest which had not yet been tried. She also testified that she had a prior felony conviction of possession of a controlled dangerous substance, marijuana. Defense counsel also ascertained that at the time of trial, Rashall was on probation for theft of $300 to $500 in neighboring Grant Parish.

Further, in response to defense counsel's questioning, Rashall testified that she was incarcerated at the time the weapon was found in her home. When asked if she was convicted of a felony when the gun was found, she responded, "No." Lastly, Ms. Rashall admitted under questioning by defense counsel that she had previously testified against Defendant. She maintained, however, that Detective

15

Willis did not ask her to testify against Defendant and that she did so because she "didn't do these things on my own."

The record, therefore, does not support Defendant's allegation that defense counsel failed to challenge Rashall's credibility on cross-examination. Further, Defendant fails to show either that his counsel's performance fell below an objective standard of reasonableness or that counsel's alleged inadequate performance prejudiced him to the extent that his trial was rendered unfair and the verdict suspect. Accordingly, we find that there is no merit to this claim.

## CONCLUSION

Defendant's conviction and sentenced are affirmed.

**AFFIRMED.**

NUMBER 06-1218

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

DENNIS WAYNE BAKER

Amy, J., concurring in part and dissenting in part.

I join the majority in the affirmation of the defendant's conviction. However, I dissent in part as I would vacate the defendant's sentence due to the trial court's failure to impose the mandatory fine of La.R.S. 14:95.1. *See State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790. I would then remand for re-sentencing in accordance with the statute.