NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-444

STATE OF LOUISIANA

VERSUS

JOBY DEFORREST DUCK

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 21-0727
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

AFFIRMED.

**Paula Corley Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, LA   70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Joby Deforrest Duck**

**Austin L. Lipsey**
**Assistant District Attorney**
**Bradley R. Burget**
**District Attorney**
**Seventh Judicial District**
**4001 Carter Street, Suite 10**
**Vidalia, LA   71373**
**(318) 336-5526**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**PERRET, Judge.**

Defendant, Joby Duck, pled guilty to an amended charge of manslaughter, a violation of La.R.S. 14:31, for the 2021 stabbing and subsequent death of Mardray Carr. Defendant was sentenced to thirty-five years at hard labor with credit for time served. On appeal, he challenges his sentence as unconstitutionally excessive. After review, we affirm.

**FACTS AND PROCEDURAL BACKGROUND:**

On March 22, 2021, Defendant was checking out at the register of the Rainbow Mini Mart in Vidalia, Louisiana, when he saw a man, Mardray Carr, in the store. Defendant believed it was the same man who had hit him in the head with a brick the year prior. Defendant waited for Mr. Carr just outside the store entrance. Then, as Mr. Carr exited the store, Defendant stabbed Mr. Carr in the stomach. Mr. Carr died that evening from his stab wound.

The State charged Defendant by bill of information with second degree murder, a violation of La.R.S. 14:30.1. Defendant pled not guilty to the charge, but after the State amended the charge to manslaughter, a violation of La.R.S. 14:31, he pled guilty on August 31, 2022. The factual basis set forth at the plea hearing was as follows:

> The State will be able to prove that on the date and time indicated on the Bill of Information . . . March 22, 2021, that Mr. Duck entered into the Rainbow Mart. It's a convenience store in - - in Vidalia, making a purchase. A few minutes later, the person by the name of Mardray Carr walked in with a Herman Bloodsaw. It's all on video. Mr. Duck goes out to his vehicle and retrieves an object. You can't really see what the object is in the video. He - - he entered back in the store and then he exits and waits by the main door entering and exiting. And when Mr. Carr exited the convenience store, Mr. Duck stabbed him with a knife in the stomach. And Mr. Carr died from his wounds.

On November 9, 2022, the trial court sentenced Defendant to thirty-five years at hard labor with credit for time served. The trial court denied reconsideration of Defendant's sentence on June 21, 2023. This appeal followed. Defendant alleges one assignment of error: The thirty-five-year sentence at hard labor is constitutionally excessive, given the facts and circumstances of the case and background of Defendant.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR:**

Defendant asserts that his sentence is constitutionally excessive because he acted irrationally, believing Mr. Carr to be the man who previously attacked him, expressed his remorse, and accepted responsibility for his actions by entering a plea of guilty for manslaughter. He further asserts that he is forty-one years old, a third felony offender, but that his criminal history does not indicate that he is one of the worst offenders.

Louisiana courts have set forth the following guidelines regarding an excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the

severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261. Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three factor test from *Lisotta*, 726 So.2d 57.

The record must also reflect that the trial court "adequately considered" the guidelines set forth in La.Code Crim.P. art. 894.1, but "the trial judge need not

articulate every aggravating and mitigating circumstance[.]" *State v. Smith*, 433 So.2d 688, 698 (La.1983); *See also State v. Guidry*, 19-790 (La.App. 3 Cir. 10/28/20), 305 So.3d 127, *writ denied*, 21-90 (La. 4/13/21), 313 So.3d 1251.

As for the sentence for manslaughter, La.R.S. 14:31(B) provides that whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. Defendant asserts that, since his sentence is only five years short of the statutory limit, his thirty-five-year sentence is a stern sentence.

After considering the *Lisotta* factors and the La.Code Crim.P. 894.1 guidelines as discussed below, we find the trial court did not impose an excessive sentence on Defendant.

*The Nature of the Crime:*

The record contains a video referenced during the hearing on Defendant's sentence and motion to reconsider sentence. It was taken from a security camera which sat above the cashier's counter of the Rainbow Mini Mart. The camera shows Defendant pacing around the store's entrance for one minute and twenty seconds. At one minute and twenty-one seconds, Mr. Carr exits the store and takes his phone from his back pocket. Mr. Carr is looking at its screen when Defendant stabs him in the stomach at the one minute and twenty-three seconds mark. Mr. Carr stumbles back into the store and runs out of camera view, trailed by Defendant brandishing the knife in his right hand. Defendant seems to shout at Carr. Turning, Defendant appears to tuck the knife into his waistband, and then disappears out the door. The video ends at one minute and thirty-one seconds.

During the hearing on Defendant's motion to reconsider sentence, Defendant's counsel argued that when Mr. Carr took his phone from his back pocket, the sudden movement may have brought Defendant's state of mind to a heightened

state, since Defendant sincerely believed Mr. Carr was the man who had viciously attacked him and who had left him for dead about a year or two prior to this incident.

No doubt Defendant's mental state was heightened before he stabbed Mr. Carr, as it would be for any man waiting to stab another. But the footage does not support counsel's claim that by reaching for his phone in his back pocket, the victim drove Defendant instantly to a high pitch of agitation, such that he could do nothing but react. In fact, Mr. Carr slowly pulled his phone from his back pocket and was so clearly looking at his phone as he left the store that he did not even regard Defendant until after the blade punctured his stomach. Mr. Carr clearly held the phone out in front of him while next to Defendant prior to Defendant stabbing him. Nor does Defendant's demeanor throughout the minute and a half suggest his heightened state was of a man suddenly "blinded by his emotions," lashing out against the culprit who had once left him hospitalized. The trial court gave an apt description of Defendant's manner at the sentencing hearing: "Your client was more or less like a shark outside, waiting. There was no confrontation. Your client was in ambush. He waited in ambush, and he stabbed Mr. Carr. Mr. Carr didn't know what was coming."

The court later continued, "I watched the video where he moved around, but he planned his attack, knowing that this gentleman was not going to be able to defend himself." In regards to any relevant mitigating circumstances, the court found there were none, stating, "the Defendant gave Mr. Carr no warning of his planned attack. The victim did not threaten the Defendant in any manner. The Defendant ambush[ed] [Mr.] Carr. He stabbed him to death." While the court acknowledged Defendant's defense, that he believed the victim to be his prior attacker, the court did not find this justified Defendant's actions: "He apparently thought he was

5

justified in his actions when he stabbed [Mr.] Carr because he stated, [']Remember me,['] before he stabbed him. Rather than attacking him with his fists or hitting him over the head as he thinks the Defendant [sic] did to him, he chose to stab him in a very sensitive area. He stabbed him in the stomach."

*The Nature and Background of Defendant:*

Defendant is a third-felony offender with offenses in Louisiana and Texas. From 2004 to the instant offense, he has been charged thirteen times, five of those charges being crimes against persons. He was convicted for each of the five crimes. They are as follows: 1) battery of a police officer, 2) assault causing bodily injury to a family member (male), 3) assault causing bodily injury to a family member (female), 4) battery of a dating partner, and 5) the instant case of manslaughter.

To Defendant's credit, a document with over fifty signatures states Defendant is a model citizen, a person who goes out of his way to help others, a member of the Mount Carmel Baptist Church, a gospel rap artist, and a father of three. Defendant attained a welding certificate from Swanson Trade School, and his work history includes moving furniture. Furthermore, in Appellant's brief, counsel notes that Defendant is "remorseful" and "deeply sorry for his actions which resulted in the death of Mardray Carr" which Defendant expressed at sentencing as well.

*Similar Sentences Imposed:*

Appellant counsel notes *State v. Griffin*, 06-543 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, *writ denied*, 07-02 (La. 9/14/07), 963 So.2d 995, where the defendant received thirty-five years at hard labor for stabbing the victim in the stomach during a verbal altercation. But unlike Defendant, the defendant in *Griffin* did not accept responsibility and plead guilty. Instead, the *Griffin* defendant claimed he attacked in self-defense, for the victim had opened the trunk of his vehicle and could have

6

taken out a weapon. However, the third circuit ultimately affirmed the defendant's sentence, noting the evidence did not suggest sufficient provocation, especially since the victim was unarmed, and that lengthy sentences for manslaughter were not uncommon.

The third circuit's observation still holds true. For example, in *State v. Hartman*, 15-1023 (La.App. 1 Cir. 2/17/16), 189 So.3d 458, *writ denied*, 16-588 (La. 3/24/17), 216 So.3d 813, a defendant received thirty-five years for stabbing to death her son's twenty-seven-year-old girlfriend. The defendant and her husband, the defendant's son, his girlfriend, and their two daughters, all lived together. The relationship between the defendant and girlfriend was often hostile. Eventually the girlfriend threatened to move out of the home with the defendant's granddaughters, never to let the defendant see them again. A fight broke out. The defendant stabbed the girlfriend twice, first in the back and then in the stomach. The defendant argued that the thirty-five-year sentence imposed was like a life sentence, and, therefore, excessive, cruel, and unusual, and that the crime was committed only after a "strong provocation." *Id.* at 466. Still, the first circuit affirmed the sentence.

In *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111, the defendant, like Defendant herein, stabbed and killed the victim, was charged with second degree murder, but was ultimately convicted of manslaughter. The defendant first stabbed the victim as they were leaving an activity at a local restaurant. He chased the victim through the parking lot, stabbing the victim again after the victim fell. The defendant claimed he acted in self-defense because the victim had attacked him on "several occasions" and had made threats towards him on the night in question. *Id.* at 902. Here, too, the third circuit affirmed the sentence.

7

Nevertheless, Defendant's counsel notes Judge Thibodeaux's dissenting opinion in *Soriano* that cites instances in which lesser sentences for similar offenses were imposed, ranging from twenty to thirty years. Judge Thibodeaux noted:

> Many cases have imposed lower sentences for similar crimes. *See State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-165 (La. 6/30/00), 765 So.2d 1067; *State v. Runyon*, 06-823 (La.App. 3 Cir. 12/6/06), 944 So.2d 820, *writ denied*, 07-49 (La. 9/21/07), 964 So.2d 330; *State v. Batiste*, 07-482 (La.App. 3 Cir. 10/31/07), 969 So.2d 7045; *State v. Brown*, 08-442 (La.App. 3 Cir. 11/12/08), 997 So.2d 875, *writs denied*, 09-232 (La. 10/30/09), 21 So.3d 279; *State v. Osborn*, 13-697 (La.App. 3 Cir. 12/11/13), 127 So.3d 1087.

*Id*. at 904.

As for the instant case, because of Defendant's history of violent offenses as well as his display of composed calculation as he waited one minute and twenty seconds for Mr. Carr, ambushing him without any provocation, Defendant's thirty-five-year sentence is warranted. "By its very nature, manslaughter is one of the worst offenses in our criminal code, just a step below murder due to either provocation or lack of intent to kill." *State v. Ponthieux*, 20-317, p. 8 (La.App. 3 Cir. 5/5/21), 319 So.3d 460, 465. Furthermore, the facts would likely support a conviction of second-degree murder; thus, Defendant's plea for manslaughter saved him from the possibility of receiving a life sentence.

Lastly, we recognize that the court considered La.Code Crim.P. art. 894.1 and provided reasons which we summarize herein. Defendant had a prior criminal history, including crimes of violence against police officers, against his own family members, and against individuals he was dating. Defendant manifested deliberate cruelty to the victim. Defendant used a dangerous weapon which caused the victim's death. Defendant ambushed the victim, leaving him no chance to defend himself.

Defendant must have contemplated his conduct would cause or threaten serious harm because he stabbed the victim in the stomach. Defendant acted without any provocation from the victim. Defendant's violent conduct would likely recur. In fact, the court specifically concluded that Defendant is a violent person based on his criminal background: "The Defendant is a violent person who loses his temper. He attacks police officers. He attacks his own family members. He attacked a dating partner. He should be in jail." Furthermore, Defendant is unlikely to respond affirmatively to probation treatment since it was his third felony offense. Defendant's hardship from imprisonment would not be excessive. There were no circumstances which mitigated Defendant's crime.

Considering the foregoing, we find the sentence imposed by the trial court is not excessive and affirm Defendant's sentence.

**DECREE:**

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.