# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-143


STATE OF LOUISIANA

VERSUS

**BRADY LOUIS VICE, SR.**


**\*\*\*\*\*\*\*\*\***
ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 167375,
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***
**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Charles
G. Fitzgerald, Judges.


**AFFIRMED.**


**Edward K. Bauman**
**Attorney at Law**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, Louisiana 70602**
**(337) 491-0570**
**COUNSEL FOR APPELLANT:**
**BRADY LOUIS VICE, SR.**

**Donald Dale Landry**
**District Attorney**
**Lafayette Parish**
**Kenneth P. Hebert**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, Louisiana 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
      **STATE OF LOUISIANA**

**PERRY, Judge.**

In this criminal appeal, Defendant, Brady Louis Vice, Sr., complains of the trial court's imposition of the maximum sentence of imprisonment for aggravated second degree battery and its order that the sentence be served consecutively with his conviction for aggravated battery.[1]  We affirm.

### FACTS AND PROCEDURAL HISTORY

Defendant and the victim, L.R.,[2] both adults, had been romantically involved with each other since November or December of 2015, and they are the parents of a minor daughter, L.V.  Although the relationship between Defendant and L.R. was initially peaceful in the first month or so, shortly thereafter Defendant became physically abusive.

At the sentencing hearing, L.R. testified about the night of October 17, 2017.  On that night, L.R. arrived home from work and saw Defendant in the kitchen where he appeared to be reaching for something in the dishwasher.  As she walked to her bedroom, she saw Defendant standing in the dark laundry room, but he did not respond when she questioned him.  As she started to put her bag down, she heard a noise, and when she turned, she saw Defendant with a knife in his hand.  L.R. testified that the noise she heard was created when Defendant had stabbed the door with the knife.  Defendant, knife in hand, then walked toward her and said, "Get on the floor."  When she asked what he was talking about, Defendant took the knife and put it to her throat and said, "Get on the floor right now."  She complied "because

---

[1] Although Defendant's latter conviction for aggravated battery is the subject of a second appeal and bears docket number 21-144, we will include the factual basis for that conviction in the present case as that scenario more fully illuminates the trial court's sentencing choice.

[2] Louisiana Revised Statutes 46:1844(W) prohibits the public disclosure of the names, addresses, or identities of crime victims under the age of eighteen and of all victims of sex offenses, but instead authorizes the use of initials and abbreviations.  In the interest of protecting minor victims and victims of sexual offenses, victims and defendants or witnesses whose names can reveal the victims' identities are referred to only by initials.

the look in his face . . . [h]e was different." Defendant told her to lie on her stomach and to take her pants off. At this point, L.R. testified that she was shaking and pleading with him to stop. "So he tells me to pull my pants down, . . . and that if I scream he'll slice my throat." After Defendant said this, he told L.R. to get up, and they walked to the bathroom. He then told L.R. to bend over the tub, and he whispered in her ear, "You're going to get raped tonight. You're going to know what it's like to get raped." Then he took the knife and placed it between her legs and against her vagina, and they walked to the sink. Defendant then told her to remove her blouse, to get down on her knees, and to perform oral sex on him. L.R. testified that she complied because Defendant still had the knife in his hand.

At this time, their baby daughter, L.V., lay asleep in another room of the house. When their daughter started crying, L.R. begged Defendant to let her attend to the baby. Defendant responded by saying, "No, you're not going anywhere." L.R. begged him again and again, and finally Defendant allowed her to go to the baby. As L.R. testified, Defendant followed her across the house to the baby's room, all the while holding the knife in his hand. As L.R. comforted the baby, Defendant told her, "Make her shut up. Make her stop crying."

After L.R. put the baby down, Defendant brought her back to the bathroom. He made her get on her back on the floor, and he started having sex with her, holding the knife still in his hand the entire time. As L.R. described, "So I'm still crying, shaking. At that point . . . it's like no . . . use in trying to plead with him because I was just scared that it was going to anger him even if I tried, so I just kind of just went with it."

L.R. testified that Defendant just stopped the sexual intercourse before ejaculating. Afterwards, Defendant put the knife into L.R.'s hand and told her to

2

kill him. When L.R. refused, Defendant put the knife down. Then Defendant said, "Tell me you love me." L.R. complied, and then he spit in her face and said, "I don't love you."

L.R. testified that she stayed at the house a few more days before she reported the incident to the police. Defendant was arrested shortly thereafter.

On July 18, 2018, a Lafayette Parish Grand Jury indicted Defendant in docket number 167375 with first degree rape, a violation of La.R.S. 14:42; one count of aggravated battery, a violation of La.R.S. 14:34; four counts of misdemeanor domestic abuse battery, a violation of La.R.S. 14:35.3; four counts of felony simple criminal damage to property over $500, a violation of La.R.S. 14:56; and one count of misdemeanor domestic abuse battery with a child present, a violation of La.R.S. 14:35.3(I). In docket number 171309, Defendant was also charged by bill of information with one count of aggravated battery, a violation of La.R.S. 14:34, and three counts of simple criminal damage to property over $500, a violation of La.R.S. 14:56.[3]

On April 18, 2019, Defendant, represented by trial counsel, filed a written plea of not guilty to all charges. However, on November 6, 2019, Defendant appeared in court with trial counsel, and after being read his rights and found competent, he entered pleas of guilty to the amended charge of aggravated second degree battery in docket number 167375 and aggravated battery in docket number 171309; all other charges were dropped. After accepting Defendant's guilty pleas, the trial court ordered a presentence investigation and set the matter for sentencing at a later date.

---

[3] This trial court docket number is before this court for appellate review under docket number 21-144 and we will render a separate opinion in that matter.

3

On September 10, 2020, Defendant was present in court for sentencing. The State called witnesses to offer victim impact statements while the defense filed letters and presented other argument on Defendant's behalf. Thereafter, the trial court sentenced Defendant to fifteen years at hard labor for aggravated second degree battery and three years at hard labor for aggravated battery. As reflected in the court minutes, both sentences were ordered to run consecutively and, in conformity with the written plea agreement, were to be served without benefit of good time diminution of sentence.

On October 13, 2020, Defendant filed a "Motion to Reconsider Sentence" with the trial court. In this motion, Defendant asserted that his fifteen-year sentence for aggravated second degree battery was unconstitutionally excessive, as the maximum sentence is reserved for the most blameworthy. Defendant claimed that a minimum or midrange sentence would have been more appropriate in this case. Defendant also asserted that the trial court did not properly consider any other mitigating circumstances as provided in La.Code Crim.P. art. 894.1(A)(33). Therefore, Defendant asked the trial court to reconsider the sentence and impose a more appropriate and proportional sentence.

On October 20, 2020, the trial court denied Defendant's "Motion to Reconsider Sentence." Thereafter, on November 13, 2020, the trial court granted Defendant's "Notice of Appeal" and appointed the Louisiana Appellate Project to represent him.

On March 31, 2021, on motion of Defendant's appellate counsel, this court consolidated the immediate appeal with docket number 21-144, for briefing purposes only; thus, counsel filed one brief. Defendant is now before this court

4

asserting one assignment of error that the trial court erred in imposing consecutive and unconstitutionally excessive sentences.

## ERRORS PATENT REVIEW

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.[4]

## DISCUSSION

Defendant asserts that the trial court erred in imposing the maximum sentence of imprisonment for aggravated second degree battery and by ordering the sentences to run consecutively to one another. Defendant argues that although his actions cannot be condoned, he is not the most egregious of offenders and should not have received the maximum sentence of incarceration.

In support of his argument, Defendant contends: (1) L.R. was aware that he had been molested as a child, that he had an alcohol problem, and took antidepressants; (2) he is a hard worker; and (3) the social worker who provided mitigation testimony recognized: (a) Defendant's family had mental health and substance abuse disorders; (b) he may suffer from PTSD as a result of his prior molestation as a child; (c) he has received medical treatment for anxiety and panic

---

[4] At the end of the sentencing hearing, the State asked the trial court to note for the record that the plea agreement was entered into with the understanding that the State would invoke the provisions of La.R.S. 15:571.3(B)(1)(b), rendering Defendant ineligible for diminution of sentence for good time as described in La.R.S.15:571.3(B)(1)(a). The trial court responded, "So ordered." The minutes of sentencing state, "The court further ordered that the defendant is not entitled to good time as per the plea agreement."

Although we recognize that a trial court has no authority to deny good time eligibility, we do not interpret the trial court's statement as an actual denial of good time eligibility. *See State v. Wright*, 19-456 (La.App. 3 Cir. 12/18/19), 286 So.3d 1176, *writ denied*, 20-262 (La. 7/24/20), 299 So.3d 73. Rather, we find the trial court merely ordered the record to reflect the term of the plea agreement pertaining to good time as it related to the offenses to which Defendant pleaded guilty. Thus, we do not recognize the trial court's statement as an error patent.

5

attacks; and (d) he could benefit from treatment from a trauma specialist. Defendant further emphasizes that he took responsibility for his actions as shown by his agreement to accept the plea agreement and recognize his ineligibility for any good time diminution of sentence. Thus, Defendant argues that the trial court's sentencing choice constitutes the needless imposition of pain and suffering.

In response, the State points out that the sentencing choice of the trial court was within the statutory limits, and Defendant has failed to establish that the trial court abused its discretion. Moreover, the State stresses that the record shows the trial court considered mitigating factors as evidenced by its reference to Defendant's work ethic.

The State further notes Defendant agreed to accept greatly reduced pleas in the criminal charges levelled against him and submitted himself to the sentencing decisions of the trial court. More importantly, although Defendant contends he is not the most egregious offender, the charges against him stem from violent acts he inflicted upon the victim, his significant other. Thus, the State concludes the sentences ordered by the court were fair, adequate, and certainly not excessive.

We will now review the trial court's sentencing choice and address Defendant's excessive sentence arguments.

As recognized in *State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261, Louisiana courts have promulgated the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02),

6

808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*See also State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*,

07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969

So.2d 626. Because Defendant is asserting his fifteen-year sentence for aggravated

second degree battery is excessive, we will review his claim under the three-factor test enunciated above.

Looking first to the nature of the crime, the sentencing range for aggravated second degree battery under La.R.S. 14:34.7(C) requires a fine of not more than ten thousand dollars, or imprisonment for not more than fifteen years, or both. In the present case, the facts undoubtedly show Defendant committed a crime of violence, and his fifteen-year sentence is the maximum period of incarceration allowed under La.R.S. 14:34.7.

Regarding the nature and background of the offender, the trial court observed Defendant was thirty-one years of age and attended trade school. Additionally, at sentencing, the State provided the court with the following information: (1) Defendant had been previously charged in 2008 with the attempted second degree murder of his friend in Lafayette Parish, and pled guilty to the amended charge of aggravated second degree battery; at that time, Defendant was sentenced to six years imprisonment at hard labor; an order revoking his probation in that matter was provided showing Defendant was terminated unsatisfactorily; (2) documents showing Defendant was also convicted of cruelty to his five-year old son when he broke his son's arm and was sentenced to five years, three years of which were suspended; (3) four protective orders were issued against Defendant; and (5) documents from Vermilion Parish showed a charge of second degree cruelty was still pending against him.

As detailed above, L.R. graphically depicted the violence Defendant inflicted upon her for hours on the night of October 7, 2017. Additionally, the trial court allowed the State to ask L.R. questions about how Defendant acted during their relationship before the night of the crime. L.R. testified that her relationship with

8

Defendant was peaceful for about a month before things started to spiral into physical violence. L.R. elaborated as follows:

> One night we were at my apartment . . . . And we had had an argument that night, and he became enraged because - - It was something he was asking me to do that I didn't want to do. And he then threw me to the ground, and he began kicking me repeatedly.

> After that I had a bruise from the top part of my hip down to the mid-thigh. And that was the first time that he ever put his hands on me.

After this incident, L.R. testified Defendant was very apologetic and she forgave him. However, there were other times where Defendant physically abused her. L.R. testified as follows about an aggravated battery committed by Defendant against her between August 1, 2016, and August 31, 2016[5]:

> One of the major events that had occurred was when we actually got the house in Youngsville together.

> . . . .

> So we got in an argument. He was drinking. He usually always was drinking. . . . He brought me into the back bedroom, and we were still arguing there.

> . . . .

> And from there he grabbed me from behind like this with his arm around my neck, and he squeezed me as hard as he could and threw me into the closet.

> . . . .

> I thought he had left at that point. He did not. He opened the door and immediately kicked me in the face with his boot.

> . . . .

> When that occurred, my lip busted. I had blood everywhere. I was freaking out. He was freaking out. He was trying to clean me up immediately, trying to get all the blood off of me.

---

[5] These facts form the basis for Defendant's other guilty plea and are more fully addressed in his companion appeal.

L.R. then testified about various instances where Defendant had caused damage and destruction in their home. After the testimony, the trial court allowed the defense to file and introduce exhibits, which were letters from Defendant's family members advocating on his behalf.

The final factor in the *Baker*/*Soileau* analysis is a comparison of the sentences imposed for similar crimes. In *State v. Lindsey*, 50,324, p. 10 (La.App. 2 Cir. 2/24/16), 189 So.3d 1104, 1111, the second circuit upheld a fifteen-year sentence for a defendant who "chased the victim from a residence, with children present, and stabbed the victim as he attempted to escape in a vehicle." The second circuit held:

> Based upon his criminal history, the trial court noted that [defendant] was quick to anger and would "lose it" when angry. The trial court found that he was "capable of being a danger to the public because of [his] temper." The trial court also noted that some people interviewed spoke highly of Lindsey, indicating that he was a hard worker. A lesser sentence would deprecate the seriousness of the offense and Lindsey's history indicates that, if released, he would likely commit another offense.

*Id.* at 1111.

In *State v. Shaw*, 49,876 (La.App. 2 Cir. 5/20/15), 166 So.3d 1185, *writ denied*, 15-1247 (La. 6/3/16), 192 So.3d 755, the second circuit upheld a fourteen-year sentence for a defendant who struck his girlfriend during an argument, and after she fled the home, defendant fired multiple gunshots at her. During a subsequent struggle between the two, the victim received a concussion after she fell and hit her head on concrete. In upholding this sentence, the second circuit held:

> Shaw's criminal record included four DWIs, simple burglary, indecent behavior with a juvenile and theft. The trial court correctly noted that the only mitigating factor in Shaw's favor was his consistent employment. Despite those prior convictions, there was no evidence that Shaw had taken advantage of any prior opportunity for rehabilitation. The circumstances surrounding the present offense demonstrated Shaw's disregard for human life through his inability to control his violent and dangerous tendencies when angry or impaired.

10

Certainly, Shaw's guilty plea afforded him a significant reduction in potential exposure to confinement. Given these considerations, we find the imposed sentence to be suitably tailored to this defendant and offense and demonstrates no abuse of discretion by the trial court. This assignment is without merit.

*Id.* at 1188-89.

In *State v. Osborne*, 48,662 (La.App. 2 Cir. 1/15/14), 130 So.3d 1012, the second circuit upheld a fifteen-year sentence for a defendant who struck her boyfriend with her vehicle. The court held:

> Moreover, we find the chosen sentence, even with the consecutive condition, to be adequately tailored to this defendant. The deliberate cruelty shown by Osborne to the victim in this case qualifies her as the worst possible type of offender. Any claimed justification (fear for her safety) for Osborne's actions was removed by her protection inside the moving vehicle. Despite this fact, she chose to ignore the opportunity to bypass the victim and instead accelerated the vehicle. Osborne received substantial leniency from the plea agreement, which took the victim's actions into account and forfeited habitual offender proceedings thereby reducing sentencing exposure from 40 years to 15 years. Thus, considering the circumstances of the offense, Osborne's criminal history, and the benefit she received from the plea agreement, the sentence imposed by the trial court does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense. This assignment of error is without merit.

*Id*. at 1016-17.

In the present case, while Defendant points to the general principle that "maximum sentences are to be reserved for the most egregious and blameworthy of offenders," we find that the facts elicited in the trial court show that Defendant fits within that category. *State v. LeBlanc*, 09-1355, p. 7 (La. 7/6/10), 41 So.3d 1168, 1172, quoting *State v. Telsee*, 425 So.2d 1251, 1253 (La.1983). The victim in this case testified that Defendant repeatedly beat her and abused her before the night of her rape. One of the instances, as quoted above, involved Defendant kicking the victim in the face with his boot. This incident is why he was also separately charged

11

with aggravated battery. When the trial court reviewed the entirety of time L.R. spent with Defendant, it properly depicted it as a "reign of terror."

The trial court further observed that Defendant was originally charged with first degree rape and ten other charges before securing a plea agreement from the State. In its oral reasons at the conclusion of the sentencing hearing, the trial court stated:

> [Y]ou greatly benefitted from this plea agreement. You were charged with first-degree rape. The penalty for first-degree rape is life in prison without probation, parole, or suspension of sentence.
>
> Based on the facts of this case had it gone to trial as a first-degree rape, had that jury convicted you there was plenty of evidence that would have supported a verdict of guilty of first-degree rape, which means that you would have been in prison at hard labor for the rest of your life. You greatly benefitted from the plea agreement.

We conclude that it was proper for the court to consider the benefits of the greatly reduced penalty exposure that defendant received from the plea bargain. *See State v. Lanclos,* 419 So.2d 475 (La.1982); *State v. Tedder*, 471 So.2d 1176 (La.App. 3 Cir. 1985).

During sentencing, the State discussed all of Defendant's prior crimes and the cruelty he displayed not only to his friend but also when he broke his son's arm and committed the present offense in the house where his new-born daughter was trying to sleep. When L.R. was recounting her rape, she mentioned how Defendant was not even fazed by his crying child. The mother, naked and on the floor, had to beg and plead with him to allow her to tend to their baby.

Finally, the State reviewed the sentencing guidelines in La.Code Crim.P. art. 894.1 with the court and specifically explored each element that applied to Defendant. Additionally, defense counsel was able to introduce letters written by Defendant's family who advocated on his behalf.

Our review of the record establishes that Defendant's deliberate cruelty perpetrated against L.R. in this case qualifies him as the worst possible type of offender. Defendant's other crimes of violence—one against his friend and later also against his son, and the criminal punishment doled out for those crimes—shows Defendant's violent behavior was not curtailed or lessened by his previous shorter periods of incarceration. Thus, considering the above-cited jurisprudence and the violent and cruel acts Defendant perpetrated against L.R., we find the trial court did not abuse its discretion in sentencing Defendant to fifteen years at hard labor, the maximum sentence of imprisonment authorized in La.R.S. 14:34.7.

Lastly, we further address the question of the trial court's decision to impose Defendant's sentences consecutively. Louisiana Code of Criminal Procedure Article 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

When a motion for reconsideration is made, La.Code Crim.P. art. 881.1 requires that the defendant include the specific ground upon which the reconsideration is urged. In *State v. Mims,* 619 So.2d 1059 (La.1993)

> [O]ne purpose of the motion to reconsider is to allow the defendant to raise any errors that may have occurred in sentencing while the trial judge still has the jurisdiction to change or correct the sentence. The defendant may point out such errors or deficiencies or may present argument or evidence not considered in the original sentencing, thereby preventing the necessity of a remand for resentencing.

If the defendant does not include a specific ground in the motion to reconsider, the appeal is limited to the issue of constitutional excessiveness. *Id.*

We have examined Defendant's "Motion to Reconsider Sentence" filed in the trial court. In that motion, Defendant made a general claim relating to the excessiveness of sentence in his motion for reconsideration and further limited that argument to the fifteen-year sentence he received for aggravated second degree battery. He did not include a specific ground in his motion for reconsideration urging any error regarding the consecutive nature of the sentences. Therefore, pursuant to the provisions of La.Code Crim.P. art. 881.1(E) we are precluded from addressing this issue.

Furthermore, our review of Defendant's brief to this court shows he only tangentially mentions the consecutive nature of the trial court's sentencing choice.[6] Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4) states, "All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue which has not been briefed." *See State v. Williams*, 632 So.2d 351, 353 (La.App. 1 Cir. 1993), *writ denied*, 94-1009 (La. 9/2/94), 643 So.2d 139 ("Restatement of an assignment of error in brief is nothing more than a listing of the assignment and certainly does not constitute briefing of the assignment."). In the present case, Defendant has presented no argument in support of his claim that the sentences should not have been ordered to be served consecutively. Therefore, considering Defendant's failure to present argument in support of his claim, we will further not consider Defendant's claim regarding the consecutive nature of his sentences.

---

[6] In one instance, Defendant states that "his sentences [were] ordered to run consecutive[ly] to one another" and asserts that this "amounts to the needless imposition of pain and suffering." Later, in the conclusion of his brief, Defendant states that "there is no reason that the sentences imposed should have been ordered to run consecutive[ly] to one another."

## DISPOSITION

For the foregoing reasons, we affirm Defendant's conviction and sentence.


**AFFIRMED.**