NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-369

STATE OF LOUISIANA

VERSUS

ERIC WAYNE LEMAY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 166059
HONORABLE PENELOPE QUINN RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHARON DARVILLE WILSON
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sharon Darville Wilson, Gary J. Ortego, and Wilbur L. Stiles, Judges.

CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.

Sherry Watters
LOUISIANA APPELLATE PROJECT
P.O. Box 58769
New Orleans, LA  70158-8769
(504) 723-0284
COUNSEL FOR DEFENDANT/APPELLANT:
     Eric Wayne Lemay

Christopher N. Walters
Grant L. Willis
Erica McLellan
Darwin Miller
Assistant Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
CRIMINAL DIVISION
P.O. Box 94005
Baton Rouge, LA  70804-9005
(225) 326-6200
COUNSEL FOR APPELLEE:
     State of Louisiana

**WILSON, Judge.**

A jury found Defendant, Eric Wayne Lemay, guilty of two counts of aggravated crime against nature, in violation of La.R.S. 14:89.1. The trial court sentenced Mr. Lemay to consecutive terms of thirteen years at hard labor on count one and fifteen years at hard labor on count two. The sentence on count two was suspended and he was placed on three years of supervised probation and ordered to pay a fine and fees as conditions of probation. Mr. Lemay now seeks review of his convictions and sentences. For the following reasons, we affirm the convictions, affirm the sentences, in part, vacate the sentences, in part, and remand for a hearing in accordance with La.Code Crim.P. art. 875.1.

I.

## ISSUES

We must decide:

(1)     whether the State failed to prove Count Two of aggravated crime against nature beyond a reasonable doubt;

(2)     whether the defendant was deprived of his Sixth Amendment right to representation by counsel of his choice when the trial court denied his request for return of his bond, despite his conviction and incarceration; and

(3)     whether the trial court abused its discretion in imposing consecutive and upper range sentences on the first offender, and in imposing fines, costs and fees on a defendant that the court declared indigent. The sentences are constitutionally excessive under the circumstances of these offenses and this first offender.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Lemay, an Oklahoma resident, previously lived in Cameron Parish for a brief time with his family for work. After returning to Oklahoma in February 2017, Mr. Lemay's stepdaughter, T.R., revealed to her grandmother, Lori Dillman, that when living in Louisiana, sometime between November 2016 and January 2017, Mr. Lemay came into the shower with her and made her wash his penis. Ms. Dillman advised T.R. to tell her therapist, and T.R. then told her therapist about the incident. The Oklahoma Department of Human Services opened an investigation, and T.R. made a video statement to a forensic interviewer in Oklahoma detailing additional incidents. At the time of the incidents, T.R. was only seven years old.

On January 15, 2019, Mr. Lemay was charged by bill of information with molestation of a juvenile, in violation of La.R.S. 14:81.2, in trial docket number 166059. The bill of information was amended to charge Mr. Lemay with aggravated crime against nature, in violation of La.R.S. 14:89.1. In trial docket number 167192, the Cameron Parish District Attorney's Office ("DA") charged Mr. Lemay with another count of aggravated crime against nature. After the DA was recused, the Attorney General's Office ("AG") took over the case. On March 23, 2022, the AG dismissed the bill of information filed in trial docket number 167192 and filed a second amended bill of information in trial court docket number 166059 to charge Mr. Lemay with two counts of aggravated crime against nature. Mr. Lemay waived his right to a jury trial.

A bench trial commenced on September 6, 2022. On the following day, the trial court found Mr. Lemay guilty as charged on both counts of aggravated crime against nature. On February 27, 2023, the trial court sentenced Mr. Lemay to consecutive terms of thirteen years at hard labor on count one and fifteen years at

hard labor on count two. The sentence on count two was suspended, and he was placed on three years of supervised probation. As conditions of Mr. Lemay's probation for count two, the trial court ordered him to pay a $5,000 fine, court costs, a supervision fee of $60 per month, and a Sex Offender Technology fee of $11 per month. Mr. Lemay made an oral motion for appeal at sentencing and thereafter filed a motion for appeal which was granted on March 23, 2023.

III.

## LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are three errors patent.

First, the sentences imposed for both counts one and two are illegally lenient. Louisiana Revised Statutes 14:89.1(D)(1) provides that the trial court must, "after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense." The trial court failed to make this determination at the sentencing proceeding; thus, the sentences are illegally lenient. However, we find that no further action is required. In *State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109 (per curiam), the supreme court found the court of appeal erred in vacating an illegally lenient sentence absent any complaint by the State. In the present case, the State has not lodged any complaint regarding Mr. Lemay's sentence. Accordingly, we will not disturb the trial court's imposition of sentence.

Second, the sentence imposed for count two, aggravated crime against nature, is illegally lenient. The trial court imposed a suspended fifteen-year sentence and placed Mr. Lemay on three years of supervised probation. According to

3

La.Code Crim.P. art. 890.3(C)(24), aggravated crime against nature is one of the crimes that "shall always be designated by the court in the minutes as a crime of violence[.]" Although the trial court did not make said designation for either counts one or two, by operation of law aggravated crime against nature is a crime of violence. Louisiana Code of Criminal Procedure Article 893(A)(2) provides:

> The court shall not suspend the sentence of a conviction for an offense that is designated in the court minutes as a crime of violence pursuant to Article 890.3, except a first conviction for an offense with a maximum prison sentence of ten years or less that was not committed against a family member or household member as defined by R.S. 14:35.3, or dating partner as defined by R.S. 46:2151. The period of probation shall be specified and shall not be more than five years.

The maximum sentence for which Mr. Lemay could have been sentenced for count two was twenty years with or without hard labor. La.R.S. 14:89.1(C)(1). Thus, count two did not fall within the exception to the prohibition of suspension discussed in La.Code Crim.P. art. 893(A)(2). Accordingly, Mr. Lemay received an illegally lenient sentence for count two. Nevertheless, for the reason discussed above, we decline to disturb the trial court's imposition of sentence.

The final error patent regards compliance with La.Code Crim.P. art. 875.1, but as it is raised in conjunction with Mr. Lemay's excessive sentence claim, it will be addressed as an assignment of error below.

## INSUFFICIENT EVIDENCE

In his first assignment of error, Mr. Lemay contends the State failed to prove beyond a reasonable doubt that he committed an aggravated crime against nature as alleged in count two of the amended bill of information. Mr. Lemay does not contest the sufficiency of the evidence as it relates to count one.

This court has discussed the standard of review as follows:

4

When the issue of sufficiency of evidence is raised on appeal, the reviewing court determines whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). Discretion in determinations of credibility is vested in the jury, which may accept or reject testimony within the bounds of rationality, and we will only impinge upon its discretion "to the extent necessary to guarantee the fundamental protection of due process of law." *Mussall*, 523 So.2d at 1310. Thus, other than ensuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *State v. Ryan*, 07-504, p. 2 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268, 1270 (quoting *State v. Lambert*, 97-64, p. 5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 727).

. . . .

. . . "Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence." *State v. Simon*, 10-1111, p. 7 (La.App. 3 Cir. 4/13/11), 62 So.3d 318, 323 (quoting *State v. Leyva-Martinez*, 07-1255, pp. 6-7 (La.App. 3 Cir. 4/30/08), 981 So.2d 276, 282, *writ denied*, 08-1200 (La. 1/30/09), 999 So.2d 747), *writ denied*, 11-1008 (La. 11/4/11), 75 So.3d 922. Further, "[i]n the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion." *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004).

*State v. Thomas*, 17-959, pp. 13–15 (La.App. 3 Cir. 9/26/18), 255 So.3d 1189, 1199–1200, *writ denied*, 18-1757 (La. 4/22/19), 268 So.3d 294, *and writ denied*, 18-1662 (La. 4/22/19), 268 So.3d 303.

Louisiana Revised Statutes 14:89.1 defines aggravated crime against nature, in pertinent part, as:

A. Aggravated crime against nature is either of the following:

. . . .

(2)(a) The engaging in any prohibited act enumerated in Subparagraph (b) of this Paragraph with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

(b) The following are prohibited acts under this Paragraph:

(i) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

Under count two, the State alleged that Mr. Lemay engaged in the prohibited act of indecent behavior with a juvenile. Louisiana Revised Statutes 14:81(A)(1) defines indecent behavior with a juvenile as "[a]ny lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons" which is committed "with the intention of arousing or gratifying the sexual desires of either person[.]" In *State v. Prejean,* 216 La. 1072, 1078, 45 So.2d 627, 629 (1950), the supreme court provided guidance in determining whether an act is a lewd or lascivious act:

The word 'lewd' means lustful, indecent, lascivious, and signifies that form of immorality which has relation to sexual impurity or incontinence carried on in a wanton manner. The word 'lascivious' means tending to excite lust, lewd, indecent, obscene, relating to sexual impurity, tending to deprave the morals in respect to sexual relations.

6

"Finding that an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor." *State v. Sturdivant,* 27,680, p. 6 (La.App. 2 Cir. 2/28/96), 669 So.2d 654, 659 (citation omitted).

To convict Mr. Lemay of count two, the State was required to prove: (1) T.R. was Mr. Lemay's stepdaughter; (2) Mr. Lemay committed a lewd or lascivious act upon T.R. or in her presence; (3) T.R. was under the age of seventeen and Mr. Lemay was at least two years older; and (4) the act was committed with the intention of arousing or gratifying either person's sexual desires. La.R.S. 14:89.1 and 14:81. Mr. Lemay does not contest that T.R. was his stepdaughter or that T.R. was under the age of seventeen and he was at least two years older. After conceding that "T.R.'s testimony arguably suffices to prove count one," Mr. Lemay contends the State's evidence proving count two was insufficient due to several deficiencies.

First, Mr. Lemay contends the evidence that the "goop" incident occurred in Louisiana was insufficient to prove jurisdiction and venue. The "goop" incident refers to a time T.R. woke up on Mr. Lemay's lap with his exposed penis on her face and felt "goop" on her face. He presents extensive arguments to this court to support his contention that the incident occurred in Oklahoma. However, as the second circuit has discussed, Mr. Lemay was required to file a motion to quash contesting jurisdiction prior to trial:

> The defendant's assertions raise the issue of venue. All criminal trials shall take place in the parish where the offense occurred. La.C.Cr.P. art. 611. Contrary to the suggestions of the defense argument, neither of the two crimes of conviction, aggravated rape and molestation of the juvenile, has an offense element concerning the place of the crime.
>
> La.C.Cr.P. art. 615 provides:

7

Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.

Under this article, if the defendant feels that he is being charged for an offense that occurred in another parish, or that the State cannot prove the venue of the alleged crime, he must raise the issue before trial by a motion to quash, and it must be decided by the court before trial. *State v. Clark,* 02–1463 (La.6/27/03), 851 So.2d 1055[, *cert. denied,* 540 U.S. 1190, 124 S.Ct. 1433 (2004)]; *State v. Gatch,* 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, *writ denied,* 96–0810 (La.9/20/96), 679 So.2d 429. The reduced burden of proof listed in Article 615 demonstrates that the venue of the crime is not an element of the crime. Accordingly, defendant's failure to file a motion to quash waives any issue of venue.

*State v. Rideout,* 42,689, pp. 3–4 (La.App. 2 Cir. 10/31/07), 968 So.2d 1210, 1212–13 (alteration added), *writ denied,* 08-2745 (La. 9/25/09), 18 So.3d 87. *See also State v. Thompson,* 12-1097 (La.App. 3 Cir. 4/10/13), 111 So.3d 580, *writ denied,* 13-1067 (La. 11/15/13), 125 So.3d 1102, *cert. denied,* 572 U.S. 1091, 134 S.Ct. 1942 (2014). Neither venue nor jurisdiction are elements of the offense of aggravated crime against nature. *See* La.Code Crim.P. art. 615; *State v. Pugh,* 44,251 (La.App. 2 Cir. 5/27/09), 12 So.3d 1085. Thus, because Mr. Lemay failed to file a motion to quash, he did not preserve the issue of jurisdiction and venue for review on appeal. *State v. Clark,* 02-1463, p. 34 (La. 6/27/03), 851 So.2d 1055, 1080, *cert. denied,* 540 U.S. 1190, 124 S.Ct. 1433 (2004). Nonetheless, the record contains sufficient evidence that the incident occurred in Louisiana. T.R. testified that the event occurred when they were living in Louisiana. This fact was reiterated in the testimony of her grandmother, Ms. Dillman, a child welfare worker who interviewed T.R, Khristina Thomas, and the forensic interviewer, Christa Johnson.

Second, Mr. Lemay argues the "goop" incident relied on by the trial court to support the conviction was admitted solely as evidence of another crime or bad act, and not a charged crime. Because a defendant cannot be convicted of committing an uncharged, "other crimes" act, Mr. Lemay alleges his conviction must be vacated. To address this argument, it is necessary to discuss the various pleadings filed in depth. For count two, Mr. Lemay was charged with violating La.R.S. 14:89.1(A)(2)(a) and (b)(i):

> in that he, ERIC WAYNE LEMAY, a person over the age of seventeen years, did in the PARISH OF CAMERON, State of Louisiana, violate the following act prohibited by LSA-R.S. 14:89.1 (A)(2)(a) when he engaged in an act enumerated in Subparagraph (b)(i), to-wit:
>
>> Indecent Behavior with a Juvenile, in violation of LSA-R.S. 14:81(A)(1), by committing a lewd or lascivious act upon the person or in the presence of T.R. (W/F, DOB 03/28/09), a child under the age of seventeen, where there was an age difference of greater than two years, with the intention of arousing or gratifying the sexual desires of the offender; and
>
> the child, T.R. (W/F, DOB 03/28/09), was at all times known to the offender to be related to the offender as his step-child[.]

In the bill of particulars, the DA alleged Mr. Lemay committed two counts of aggravated crime against nature. The first incident occurred when he got in the shower with T.R. and made T.R. wash his penis with a bar of soap. The DA alleged the conduct constituted a violation of La.R.S. 14:89.1(A)(2)(a) insomuch as Mr. Lemay engaged in molestation of a juvenile. The second incident occurred when T.R. woke up with "goop" on her face and was laying on Defendant's lap with his exposed penis in her face. The DA alleged the conduct constituted a violation of La.R.S. 14:89.1(A)(2)(a) insomuch as Mr. Lemay engaged in indecent behavior with

9

a juvenile. The DA was subsequently recused, and the AG was appointed to prosecute the case.

On April 21, 2022, the AG filed a "Notice of State's Intent to Introduce Evidence of Other Crimes, Wrongs, and Bad Acts Pursuant to Code of Evidence Articles 412.2 and 404(B)." On August 26, 2022, the AG filed an amended notice, entitled "Amended Notice of State's Intent to Introduce Evidence of Other Crimes, Wrongs, and Bad Acts Pursuant to Code of Evidence Article 412.2."

On September 1, 2022, the State again amended the notice and specifically alleged the following:

3.

During the forensic interview of the juvenile victim, T.R., it was learned that the defendant, while in Oklahoma, watched T.R. take a shower with a juvenile female friend who was visiting their home. T.R. describes that her friend didn't know how to wash her hair, so T.R. joined her friend in the shower at her mother's direction and "washed her hair for her. And then Eric... he sat there on his phone in his pajamas watching." Forensic Interview, pg. 27-28. A copy of the forensic interview transcript is attached as State's Exhibit A-1.

4.

During the forensic interview of the juvenile victim, T.R., it was learned that the defendant (either in Louisiana or Oklahoma) placed the face of . . . T.R. "on his private area. He—his pants were pulled down to his knees. He had a shirt on and he was playing a game. And then I woke up and I was under the blanket. And then I woke up and I got up, went to the bathroom to wash it off but all the goop wouldn't come off and it was clear." Forensic Interview, pg. 31.

5.

During the investigation conducted by the Oklahoma Department of Human Services (OKDHS) and the interview of the victim, T.R., it was learned that the defendant often exposed himself in the presence of T.R. in their home in Cameron Parish, Louisiana. T.R. states the defendant would "always take his private part out of his

10

pants and say he is itching it." T.R. further stated the defendant "would put his hand in his pants and watch her while she was in the living room playing." OKDHS Report, pg. 2, 8, 15. A copy of the OKDHS Report is attached as State's Exhibit A-2.

6.

The State of Louisiana avers that the defendant's actions as described above are evidence of a lustful disposition toward children, as outlined in La. Code of Evidence Art. 412.2. The victim, T.R., will testify as to each of these acts at trial.

In the motion, the State clarified that it did not intend to introduce any La.Code Evid. art. 404(B) evidence at trial. Rather, the State intended to introduce the evidence alleged in Paragraphs 3, 4, and 5 above, which contains the evidence of other crimes, wrongs, or bad acts of Mr. Lemay indicating a lustful disposition towards children pursuant to La. C.E. art. 412.2. The trial court's order indicates the "Second Amended Notice of State's Intent to Introduce Evidence of Other Crimes, Wrongs, and Bad Acts Pursuant to Code of Evidence Article 412.2" was deemed good and sufficient and the State was permitted to introduce the evidence.

"It is a well-settled proposition that the state is limited in its proof to the facts recited in the bill of particulars." *State v. Odom*, 07-516, p. 12 (La.App. 1 Cir. 7/31/08), 993 So.2d 663, 672 n.5 (citing *State v. Ford,* 349 So.2d 300, 304 (La.1977)). The "goop" incident was referred to in the bill of particulars to satisfy count two; the bill of particulars was never amended or supplemented. Throughout trial, the State's theory was that the "goop" incident satisfied count two of the bill of information. Further, in closing statements, defense counsel referred to the "goop" incident and argued it was not a lewd or lascivious act. Despite the State's reference to the "goop" incident in its "Second Amended Notice of State's Intent to Introduce Evidence of Other Crimes, Wrongs, and Bad Acts Pursuant to Code of Evidence

11

Article 412.2," Mr. Lemay was not convicted based on an uncharged, "other crimes" act.

Finally, Defendant argues that the "goop" incident as described by T.R. does not satisfy each element of aggravated crime against nature and the underlying offense of indecent behavior with a juvenile. While noting that, generally, a victim's testimony alone may be sufficient to establish the elements of a sexual offense, Mr. Lemay contends there was no forensic evidence or corroborative witnesses to support T.R.'s testimony. Further, he argues T.R.'s testimony does not support a charge of indecent behavior with a juvenile, because:

> She did not say that she touched Mr. Lemay or that he touched her. [T.R.] did not say that Mr. Lemay put his penis on her face or put her face on his penis. She did not testify that she saw him doing anything with his penis. She did not remember where she fell asleep or she did not remember the incident. She did not know how she got there.

"Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence." *State v. Leyva-Martinez*, 07-1255, pp. 6–7 (La.App. 3 Cir. 4/30/08), 981 So.2d 276, 282, *writ denied*, 08-1200 (La. 1/30/09), 999 So.2d 747. Such testimony is sufficient even when there is no medical, scientific, or physical evidence. *State v. Rives*, 407 So.2d 1195 (La.1981); *State v. Thomas*, 30,490 (La.App. 2 Cir. 04/08/98), 711 So.2d 808, *writ denied*, 99-331 (La. 07/02/99), 747 So.2d 8. Though there was no medical, scientific, or physical evidence in this case, T.R.'s testimony satisfied the elements of the offense:

> A. There was a time where I woke up on his private area.
>
> Q. Okay. Tell us about that.
>
> A. I had fallen asleep and the next morning, I didn't remember it, but I had woken up and his pants were pulled down to his knees and my face was on his penis. And I had felt something on my face so I went to the restroom and I

was trying to wash it off, and it wouldn't come off. And I had asked him, how did I get in his room and he had said I had slept walk[ed].

Q.     What color was this stuff on your face?

A.     It's like a clearish whitish color.

Multiple witnesses confirmed that T.R.'s trial testimony was consistent with her previous statements to the DHS investigators and forensic interviewer. In her forensic interview with Ms. Johnson, T.R. said:

> Well, one time Mama went to work and then he went downstairs and . . . and he moved my face right here on his private area. He -- his pants were pulled down to his knees. He had a shirt on and he was playing a game. And then I woke up and I was under the blanket. And then I woke up and I got up, went to the bathroom to wash it off but all the goop wouldn't come off . . . .

T.R. detailed that Mr. Lemay pulled down his underwear and played a game on his phone while she laid on his lap. When she woke up, he was still playing the game and she had clear "goop" on her face.

Courts have found a range of offensive acts to constitute "lewd and lascivious conduct." *See, e.g., State v. Robinson*, 43,063, p. 8 (La.App. 2 Cir. 2/13/08), 975 So.2d 853, 858 (Robinson groped the victim, called her "baby," and commented that he could not help himself); *State v. Stamper*, 615 So.2d 1359, 1362–63 (La.App. 2 Cir), *writ granted on other grounds*, 624 So.2d 1208 (La.1993) (per curiam) (Stamper rubbed the victim's buttocks and watched him shower for approximately forty-five seconds); *State v. Sturdivant*, 669 So.2d at 656 (a parent, while receiving a school tour, made sexual comments to a student and then groped her). Further, in determining whether an act is lewd or lascivious, courts should consider "the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor." *Sturdivant*, 669 So.2d at 659. The incident described above—T.R. waking up with her head in

13

Defendant's lap, seeing his pants pulled down to expose his penis, and finding a clearish, whitish substance on her face—satisfies lewd or lascivious conduct.

Though Mr. Lemay attempts to call T.R.'s credibility into question, it is the factfinder's role to weigh the respective credibilities of the witnesses, and the reviewing court will not second-guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the *Jackson* standard of review. *State v. Richardson,* 425 So.2d 1228, 1232 (La.1983). After reading the record and considering the evidence in the light most favorable to the State, this court finds that the "goop" incident as testified to by T.R. meets the definition of indecent behavior with a juvenile and, therefore, supports the conviction of aggravated crime against nature (count two) as defined in La.R.S. 14:89.1(A)(2)(a). It is undisputed that Mr. Lemay was T.R.'s stepfather, and as evidenced by the record, T.R. was only seven or eight years old and Mr. Lemay was in his late forties when the prohibited act was committed. Accordingly, we find that this assignment lacks merit.

**RIGHT TO COUSEL OF CHOICE**

In his second assignment of error, Mr. Lemay asserts that he was deprived of his Sixth Amendment right to representation by counsel of his choice when the trial court denied his request for return of his bond, despite his conviction and incarceration.

After the guilty verdicts were handed down on September 7, 2022, defense counsel, Ginger Vidrine, moved for a stay of the execution of Mr. Lemay's sentence and asked that Mr. Lemay be permitted to continue on his bond that he had previously posted. The State objected, and the trial court remanded Mr. Lemay to the Cameron Parish Sheriff's Office pending his November 29, 2022 sentencing hearing. On October 11, 2022, Mr. Lemay sent a letter to the trial court stating that he had released his attorney, Ms. Vidrine, from all legal work. The record does not

14

contain a motion to withdraw as counsel of record by Ms. Vidrine, but she no longer appeared in court on Mr. Lemay's behalf. Over the next several months, four hearings were held concerning Mr. Lemay's efforts to retain new counsel for his sentencing hearing.

On October 24, 2022, the trial court held a status hearing during which Mr. Lemay indicated that his family was in the process of hiring new counsel. The trial court told Mr. Lemay:

> Okay. I mean, if you can afford to hire an attorney, I would much rather your [sic] hire an attorney. But we can't wait until you find an attorney that wants to come down here. We are going to have to give you a deadline to get an attorney.

Mr. Lemay was instructed to "have something firm within two weeks on the attorney." On November 7, 2022, Mr. Lemay again stated his intention to hire private counsel and he told the trial court that his family was considering three different attorneys. Each attorney he consulted requested a copy of his trial transcript; Mr. Lemay said he had sent payment for the cost of transcribing his trial to the court reporter but was still awaiting the transcript. The trial court set another status hearing for January 5, 2023, and set sentencing for January 24, 2023. At the end of the hearing, the trial court asked Mr. Lemay if he had any questions, and the following colloquy occurred:

THE DEFENDANT:

I do have one question for you about my bond money, if there is somebody you can put me in touch with to try to scoot that along. It has been a couple of months now. They are --

THE COURT:

Well, your bond money will not be released until the case is completely disposed of and that wouldn't be until you are sentenced.

THE DEFENDANT:

Oh, well, thank you for that information.

. . . .

THE COURT:

Okay. You have a cash bond?

THE DEFENDANT:

Yes, it is.

THE COURT:

Okay. Yes, so it wouldn't be until you are officially finished with this court --

THE DEFENDANT:

Okay.

THE COURT:

-- and that would be your sentence. Okay. All right. Well, good luck to each of you.

THE DEFENDANT:

Thank you.

At the January 5, 2023 status hearing, Mr. Lemay stated that he had hired attorney Adam Johnson. It was later determined that Mr. Johnson was only retained to review the trial transcript and had not yet been retained to represent Mr. Lemay at sentencing. Mr. Lemay stated that his family was also in touch with another attorney. The trial court indicated that Mr. Lemay needed to be represented at sentencing and suggested that he could be represented by a public defender due to his lack of funds. After a discussion with the State, the trial court appointed Michael McHale, with the public defender's office, to represent Mr. Lemay for sentencing, unless he hired an attorney before then.

Mr. Lemay informed the trial court on January 24, 2023, that his family had hired Mr. Johnson for his sentencing. Efforts were made to get in touch with

Mr. Johnson at the hearing, but the efforts were unsuccessful. Mr. Johnson never appeared in court or informed the trial court that he was retained by Mr. Lemay. There was nothing in the record to suggest his enrollment in the case. Finally, on February 27, 2023, the trial court held the sentencing hearing, and Defendant was represented by Mr. McHale. Mr. Lemay did not move for a continuance.

On appeal, Mr. Lemay argues that the erroneous ruling on the bond prevented him from hiring counsel of his choice. He relies on La.Code Crim.P. art. 331(A)(1) (emphasis added), which provides: "*Upon conviction* in any case, the bail undertaking shall cease and the surety shall be relieved of all obligations under the bail undertaking *by operation of law* without the need to file a motion or other pleading." Consequently, by operation of La.Code Crim.P. art. 331(A)(1), Mr. Lemays's bail undertaking ceased upon his conviction, and his surety was relieved of all obligations under the bail undertaking. *See e.g., State v. Byrd*, 20-447 (La.App. 1 Cir. 12/30/20), 318 So.3d 878. Mr. Lemay argues that the trial court's refusal to return his bond money slowed down his efforts to secure his choice of counsel and resulted in "appointed counsel who provided only perfunctory representation."

Conversely, the State argues:

> There is absolutely no evidence in the record to actually support his assertion that his bond money was not returned to him, and even more importantly than that, there is no evidence whatsoever in the record that Defendant LeMay ever raised the issue of his bond money to the District Court or that this alleged failure to return his bond money is the actual reason he could not retain the counsel of his choice.

However, regardless of whether the bond money was returned, the State contends Mr. Lemay was provided with ample time to retain counsel of his choice and failed to do so.

In *State v. Ventris*, 10-889, pp. 13–14 (La.App. 5 Cir. 11/15/11), 79 So.3d 1108, 1118–19, the fifth circuit discussed a defendant's right to counsel of his choice as follows:

> The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *State v. Reeves*, 06–2419, p. 35 (La.5/5/09), 11 So.3d 1031, 1055, *cert. denied,* 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009).

> The Supreme Court has found that it is structural error requiring reversal and a violation of the Sixth Amendment when a criminal defendant has been denied his right to retained counsel of choice. *Reeves,* 06–2419 at 36, 11 So.3d at 1056. When the right to be assisted by counsel of choice is wrongly denied, no harmless error analysis is required regarding counsel's effectiveness or prejudice to the defendant. *Id.* The Supreme Court stated:

>> Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

> *Reeves,* 06–2419 at 36, 11 So.3d at 1056, quoting *United States v. Gonzalez–Lopez,* 548 U.S. 140, 148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).

> The Louisiana Constitution ensures similar rights to the assistance of counsel for a criminal defendant as those arising under the federal constitution. *Reeves,* 06–2419 at 37, 11 So.3d at 1056. Generally, a person accused in a criminal trial has the right to counsel of his choice. *Reeves,* 06–2419 at 37–38, 11 So.3d at 1057 (quotation omitted). An indigent defendant's right to choose his defense counsel, however, only allows the defendant to retain the attorney of choice if the defendant can manage to do so. The right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. *Id.*

> A defendant's right to choose an attorney must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. *State v. Burbank,* 07–125, p. 7 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1178, *writ denied,* 07–2287 (La.4/25/08), 978 So.2d 364. The trial court's ruling on this issue will not be disturbed absent a clear showing of abuse of discretion. *State v. Bridgewater,* 00–1529 p. 21 (La.1/15/02), 823 So.2d 877, 896, *cert. denied,* 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).

In the present case, there is nothing in the record to prove that Mr. Lemay's bond money was not returned or that Mr. Johnson had been, in fact, retained to represent him at sentencing. *Cf. State v. Woods*, 09-399, p. 25 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 410, *writ denied*, 10-784 (La. 10/29/10), 48 So.3d 1096. Furthermore, even if he had not yet received his bond money, Mr. Lemay failed to exercise his right to counsel of his choice at a reasonable time. Mr. Lemay released Ms. Vidrine as his counsel shortly after he was convicted. Over the next several months, the trial court continued his sentencing hearing numerous times to allow him to retain counsel of his choice, but he failed to do so. The trial court's appointment of Mr. McHale, who had been present at Mr. Lemay's trial and was familiar with his case, was not an abuse of discretion.

Accordingly, this assignment of error is without merit.

## EXCESSIVE SENTENCE

In his final assignment of error, Mr. Lemay contends that his sentences are constitutionally excessive under the circumstances of the offenses and based on his status as a first offender. Moreover, he argues the trial court abused its discretion in imposing upper range sentences, ordering his sentences be served consecutively, and in imposing fines, costs, and fees on him, an indigent defendant, without complying with La.Code Crim.P. art. 875.1.

Louisiana Code of Criminal Procedure Article 881.1 provides:

A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.

. . . .

E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In the present case, neither defense counsel nor Mr. Lemay objected to the sentences imposed at the sentencing hearing or made a motion to reconsider the sentences. Given that Mr. Lemay failed to comply with La.Code Crim.P.art. 881.1, our review is restricted to a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the

20

imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00)00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-0452 (La. 9/26/14), 149 So.3d 261.

Furthermore, this court adopted the fifth circuit's three-factor test from *Lisotta* in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626.

Looking first to the nature of the offenses, Mr. Lemay was convicted of two separate counts of aggravated crime against nature stemming from sexual offenses against his then-seven-year-old stepdaughter. We note that aggravated crime against nature is enumerated as a crime of violence. La.R.S. 14:2(B). The sentencing range includes a fine not to exceed fifty thousand dollars and/or imprisonment for a term not less than five years nor more than twenty years with or without hard labor. La.R.S. 14:89.1(C)(1). The trial court sentenced Mr. Lemay to consecutive terms of thirteen years at hard labor on count one and fifteen years at hard labor on count two. The sentence on count two was suspended and he was placed on three years of supervised probation with financial obligations imposed as a condition of his probation.

As to the nature and background of the offender, Mr. Lemay was described as a fifty-one-year-old first felony offender at the time of sentencing. He was divorced, a father of three, and a grandfather. The trial court noted Mr. Lemay's good employment history, military experience, and lack of criminal history. Multiple individuals, including his sister, daughters, and his former teacher, spoke on his behalf at sentencing. Before imposing the sentences, the trial court discussed the following mitigating and aggravating factors:

THE COURT:

Okay.

I've listened to everyone that has spoken to me today. I just acknowledge that some of those people weren't here for the entirety of the trial, so they may not know everything that the Court has heard in this case. But in this case I found that the victim was a stepchild of yours with a date of birth of March 28, 2009, and who was the age -- between the ages of seven and nine at the time of the offenses.

According to the pre-sentence investigation I find the mitigating factors applicable in this case are that the

22

defendant has no prior felony convictions; that the defendant is only 51 years of age; that the defendant had a good employment history prior to being arrested or convicted on this charge. The defendant attended three years of college. The defendant served in the Army reserves from 1988 to 1994, obtaining the rank of E-5 and receiving an honorable discharge. The defendant has three children. And the defendant has a large amount of family and friends here to support him.

The aggravating factors that this Court has considered are that the defendant's conduct manifested a deliberate cruelty to the victim. The defendant knew or should have known that the victim of the offense was particularly vulnerable or incapable of resisting due to the age of the victim. The defendant used his position and his relationship to the victim to facilitate the commission of the offenses against the juvenile. The victim was under the defendant's care at the time of the offense. The defendant has shown no remorse for his actions nor has he taken any responsibility. The Court also finds that there is a need for a sentence of imprisonment, because there is an undue risk that the defendant will commit another crime. The defendant is in need of correctional treatment or a custodial environment that can be provided by his commitment to an institution, and a lessor [sic] sentence would deprecate the seriousness of the offense.

The last factor to consider is the imposition of sentences for similar crimes. In *State v. Faciane*, 19-702 (La.App. 3 Cir. 3/18/20), 297 So.3d 823, this court found Faciane's five concurrent sentences of fifteen years at hard labor were not individually excessive after he was convicted of five counts of aggravated crime against nature. The victim was Faciane's stepdaughter who was fourteen when the sexual abuse started. Faciane was exposed to an aggregate term of imprisonment of one hundred years, and he received an aggregate sentence of fifteen years. Further, had the trial court ordered his five sentences to run consecutively, the total term of imprisonment would have been seventy-five years. This court discussed the mitigating factors, noting "that although Defendant had a prior criminal history, he had no such record for almost twenty years until the current charges were filed." *Id.* at 834. While Faciane benefited from the trial court's imposition of concurrent

fifteen-year sentences and Mr. Lemay received consecutive sentences, Mr. Lemay's total time of incarceration is like Faciane's, considering Mr. Lemay's fifteen-year sentence for count two was suspended. Thus, Mr. Lemay's upper-range sentences are not individually excessive.

In *State v. Roy*, 15-516, pp. 11−12 (La.App. 3 Cir. 11/4/15), 177 So.3d 1112, 1118−19, this court discussed the imposition of consecutive sentences for a defendant convicted of two counts of molestation of a juvenile as follows:

> Louisiana Code of Criminal Procedure Article 883 provides in pertinent part:
>
> > If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
>
> As stated previously, the trial court ordered the sentences imposed in the present case to be served consecutively. Since the sentences were for two separate offenses involving two separate victims, the offenses were not based on the same act or transaction or part of a common scheme or plan. Thus, in accordance with La.Code Crim.P. art. 883, the sentences imposed for the offenses would be served consecutively unless the trial court specifically ordered otherwise. *See State v. H.B.,* 06–1436, p. 7 (La.App. 3 Cir. 4/4/07), 955 So.2d 255, 260, where this court stated, "Review of the jurisprudence shows that different victims, places, or dates mean different transactions and different schemes or plans." Hence, we find that the trial court did not abuse its discretion by imposing consecutive sentences in the present case.
>
> In *State v. Thibodeaux,* 05–1187 (La.App. 3 Cir. 3/1/06), 924 So.2d 1205, *writ denied,* 06–700 (La.10/6/06), 938 So.2d 65, this court upheld three ten-year-consecutive sentences after Thibodeaux pled guilty to three counts of molestation of a juvenile. The offenses in *Thibodeaux* were not based on the same act or

transaction and occurred over a five-year period for one victim and over a six-month period for the other two victims. *Id.* at 1214. This court further noted that Thibodeaux's acts reflected a propensity to prey on those unable to protect themselves, particularly the mentally handicapped victim. *Id.* The record contained evidence of threats of violence and actual acts of violence by Thibodeaux as well as evidence that Thibodeaux sought to purchase a firearm while out on bond. *Id.*

In *State v. Mickens,* 31,737 (La.App. 2 Cir. 3/31/99), 731 So.2d 463, *writ denied,* 99–1078 (La.9/24/99), 747 So.2d 1118, the second circuit upheld consecutive sentences for one count of molestation of a juvenile and one count of indecent behavior with a juvenile (both offenses committed against the same victim). Mickens was sentenced to ten years for molestation of a juvenile and seven years for indecent behavior with a juvenile. In particular, the second circuit noted that Mickens was in a common-law relationship with the victim's mother and violated his paternal role in the commission of the crimes. *Id.* at 472. Additionally, the second circuit noted that consecutive sentences are not uncommon in cases involving acts of molestation over an extended period of time by persons in the same household as the victim. *Id.* at 473.

Considering the above statutory and jurisprudential authority, we find the trial court did not abuse its discretion in imposing the minimum sentences, albeit consecutively. Defendant's assignment of error lacks merit.

In the present case, Mr. Lemay argues there was no basis for the imposition of consecutive sentences because T.R. did not know precisely when the offenses occurred or whether the offenses happened on the same date. According to the bill of information, however, the offenses occurred within a three-month period. The imposition of consecutive sentences is within the discretion of the trial court under La.Code Crim.P. art. 883. Additionally, as discussed above, consecutive sentences are not uncommon in cases involving sexual offenses against a single victim which occur over an extended period by persons in the same household. *State v. Mickens,* 31,737, pp. 16–17 (La.App. 2 Cir. 3/31/99), 731 So.2d 463, 473, *writ denied,* 99-1078 (La. 9/24/99), 747 So.2d 1118. To the extent that Mr. Lemay

alleges the trial court failed to state particular justification for the imposition of consecutive sentences and failed to adequately comply with La.Code Crim.P. art. 894.1, he is precluded from making that specific argument on appeal. La.Code Crim.P. art. 881.1(E).

Considering the statutory and jurisprudential authority discussed above, the trial court did not abuse its discretion in imposing upper-range consecutive sentences. The record supports the trial court's reasoning that lesser sentences would deprecate the seriousness of the offenses, and although Mr. Lemay argues that lesser sentences are more suitable, the pertinent question is whether the trial court abused its broad sentencing discretion. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957 (per curiam), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996). Having reviewed the record and the sentences imposed in similar cases, we find that Mr. Lemay's sentences are not constitutionally excessive.

Mr. Lemay also asserts that the trial court erred in imposing fines, costs and fees because it failed to hold a hearing in accordance with La.Code Crim.P. art 875.1 and because he was found to be indigent. Effective August 1, 2022, prior to Mr. Lemay's February 27, 2023 sentencing, La.Code Crim.P. art. 875.1 provides the following, in pertinent part:

> A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven. Creating a payment plan for the

26

offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

. . . .

(2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

G. The provisions of this Article shall apply only to defendants convicted of offenses classified as felonies under applicable law.

As conditions of Mr. Lemay's probation for count two, the trial court ordered him to pay a $5,000 fine, court costs, a supervision fee of $60 per month,

27

and a Sex Offender Technology fee of $11 per month. However, there is no indication that the trial court conducted a hearing to "determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents." La.Code Crim.P. art. 875.1(C)(1). Therefore, the trial court did not comply with La.Code Crim.P. art. 875.1. Paragraphs B and G of La.Code Crim.P. art. 875.1 make it clear that the article applies to *any* fine, fee, cost, restitution, or other monetary obligation imposed as part of a criminal sentence (principal) or as a condition of parole or probation in a felony case. The trial court is required, prior to imposing or enforcing a financial obligation, to conduct a hearing to determine whether payment in full would cause substantial financial hardship to the defendant or his dependents. The judicial determination of financial hardship may be waived by the court or the defendant. However, if the court waives the hearing, it must provide reasons on the record for its determination that the defendant is able to pay. If the court determines that a substantial financial hardship would be created on either the defendant or his dependents, it can waive all or any portion of the obligation (for restitution, the victim must consent) and order a monthly payment plan, half of which must be distributed toward a restitution obligation, if such were imposed.

In *State v. Tucker*, 22-735, p. 23 (La.App. 3 Cir. 5/31/23), 368 So.3d 187, 201, this court held that a defendant is not required to lodge an objection or file a motion to reconsider sentence on the basis that the trial court failed to comply with La.Code Crim.P. art. 875.1 in order to preserve the claim for review. Thus, Mr. Lemays's claim is properly before this court. In *Tucker*, 368 So.3d at 202, this court further found the trial court erred in failing to hold a hearing pursuant to La.Code Crim.P. art. 875.1 prior to imposing a $5,000 fine; hence, this court vacated the fine

28

and remanded the case to the trial court for the required hearing. Similarly, Mr. Lemay was entitled to a hearing pursuant to La.Code Crim.P. art. 875.1 prior to the imposition of the financial obligations.

Mr. Lemay also claims that his $5,000 fine and fees are illegal because he was declared indigent by the trial court. This court has discussed this claim as follows:

> Courts have found representation by court-appointed counsel and the Louisiana Appellate Project as presumptive evidence of indigency when deleting default time. *See* [*State v.*] *Belton*, [11-948 (La.App. 3 Cir. 3/7/12),] 88 So.3d 1159. However, in *State v. Dickerson*, 579 So.2d 472, 483 (La.App. 3 Cir.), *writ granted in part on other grounds*, 584 So.2d 1140 (La.1991), this court stated: "[W]e find that the trial court's imposition of a fine upon the indigent defendant in this case, which did not provide for a jail term in the event of default of payment of the fine, is not excessive and is not an illegal sentence." Additionally, in *State v. Williams*, 598 So.2d 708, 710 (La.App. 5 Cir.), *writ denied*, 604 So.2d 996 (La.1992), the fifth circuit stated, "The defendant's further contention that an indigent may not be sentenced to pay a fine and costs, however, is an inaccurate statement of law. An indigent defendant may not be sentenced to *additional* jail time for failure to pay a fine or costs." Thus, we find Defendant's contention that imposition of a fine is illegal because he is indigent to be without merit.

*Tucker*, 368 So.3d at 202.

Before imposition of the $5,000 fine and fees, the trial court should have held a hearing pursuant to La.Code Crim.P. art. 875.1. Because a hearing was not held, the financial obligations are hereby vacated, and the matter is remanded for the required hearing. Mr. Lemay's convictions and sentences are otherwise affirmed.

29

IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Lemay's convictions are affirmed. All financial obligations are vacated and we remand this case for a hearing pursuant to La.Code Crim.P. art. 875.1 to determine Mr. Lemay's ability to pay. In all other respects, Mr. Lemay's sentences are affirmed.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.